# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dawn Woltkamp,<br><br>                Plaintiff,<br><br>     v.<br><br>Los Rios Classified Emp. Ass'n, et.al.,<br><br>                Defendants,<br><br>Rob Bonta, in his official capacity as Attorney General of California,<br><br>                Real Party in Interest/Intervenor. | No. 2:20-cv-00457-KJM-DB<br><br>ORDER |

Plaintiff Dawn Woltkamp ("Woltkamp") filed this § 1983 action requesting injunctive and declaratory relief for the allegedly unlawful deprivation of her First and Fourteenth Amendment rights to refrain from subsidizing the speech of the defendant union, Los Rios Classified Employees Association ("LRCEA"). Xavier Becerra[1] in his official capacity as California Attorney General intervened, ECF No. 18, and filed a motion to dismiss, ECF No. 22. Woltkamp and defendant LRCEA filed cross motions for judgment on the pleadings, ECF Nos. 23 & 24, respectively. Having considered the arguments of counsel made at hearing on September 25, 2020, and the parties' briefs including the supplemental briefing, the court **grants** the Attorney General's motion to dismiss. LRCEA's motion for judgment on the pleadings and plaintiff's motion for judgment on the pleadings are **denied as moot**.

**I.     BACKGROUND**

Woltkamp is a "public school employee" in the employee benefits division of defendant Los Rios Community College District. Compl. ¶¶ 12–14, ECF No. 1. On March 17, 2017, Woltkamp signed a document titled, "LRCEA Classified Employee Association Organizational Security Deduction Check-Off." *Id*. ¶ 20; Jt. Stip. of Counsel ("Jt. Stip."), ECF No. 25,[2] Ex. A ("Dues Deduction Check-Off Form"), ECF No. 25-1. This dues deduction authorization form expressly stated it is an "Agreement with Los Rios Classified Employee Association Contract, Article 2." It provided three distinct options, with a check-off box next to each option, as follows:

> (1) Union membership deduction: $216 annually (or currently authorized dues rate), to be equally distributed over assigned work year.

---

[1] Rob Bonta was sworn in as the Attorney General of California on April 23, 2021 and is **substituted** in the caption of this case in place of Xavier Becerra. *See* Fed. R. Civ. P. 25(d); Office of Governor Gavin Newsom, "Governor Newsom Swears in Rob Bonta as Attorney General of California" (Apr. 23, 2021), https://www.gov.ca.gov/2021/04/23/governor-newsom-swears-in-rob-bonta-as-attorney-general-of-california/, last visited May 3, 2021.

[2] Plaintiff and defendant stipulated to consideration of three exhibits: Ex. A (dues deduction authorization form, dated March 17, 2017), ECF No. 25-1; Ex. B (Resignation Letter, dated September 13, 2018), ECF No. 25-2; Ex. C (Collective Bargaining Agreement (CBA) between LRCEA and defendant District, 2017-2020), ECF No. 25-3. *See generally* Jt. Stip.

> (2) Non-Membership, Representational Service Fee: $216 per annually (or currently authorized dues rate), to be equally distributed over assigned work year.
>
> (3) Application for any employee who is a member of a religious body whose traditional tenets and teachings include objections to joining or financially supporting employee organizations shall, in lieu of LRCEA membership dues or a fee, have an amount deducted monthly from his/her paycheck equivalent to the monthly LRCEA fees [$216 per annually (or currently authorized dues rate), to be equally distributed over assigned work year], with such deduction deposited to one of the following charitable organizations designated by the unit member . . .

Dues Deduction Check-Off Form at 1 (parentheses and brackets in original).

Plaintiff checked off the first box labelled "Union membership deduction," signed and dated the Dues Deduction Check-Off Form. *Id.* On July 1, 2017, defendant school district entered into a Collective Bargaining Agreement ("CBA") with LRCEA as the exclusive representative for plaintiff's bargaining unit, effective July 1, 2017 through June 30, 2020. Compl. ¶¶ 16–17.

The CBA provides in pertinent part:

> The organizational security provisions described in this article of the Agreement constitute an Agency Shop. Within thirty (30) calendar days of the effective date of this Agreement or the employee being employed into a position in the Bargaining Unit, whichever comes first, each employee shall either join LRCEA as a member and pay its membership dues ("dues"), remain a non-member of LRCEA and pay the fair share service fee ("fee") it charges, or, if qualified pursuant to Section 3546.3 of the [Educational Employment Relations Act] EERA, pay the charitable contribution required by this Agreement.

CBA § 3.1.1 at 13 (bracketed text added). California's EERA expressly authorizes the collection of agency fees. Specifically, it provides:

> Notwithstanding any other provision of law, upon receiving notice from the exclusive representative of a public school employee who is in a unit for which an exclusive representative has been selected pursuant to this chapter, the employer shall deduct the amount of the fair share service fee authorized by this section from the wages and salary of the employee and pay that amount to the employee organization . . .

Cal. Gov't Code § 3546(a); *see also id.* §§ 3540.1(i)(1), 3542(2), 3543(2).

3

In a separate section, the CBA provides that, "Each employee who is a member of LRCEA on the effective date of this Agreement or who subsequently becomes a member of LRCEA shall, from that date forward, remain as a member of LRCEA and pay its dues for the duration of this Agreement and in accordance with the EERA." CBA § 3.1.2 at 13.

On September 19, 2018, after learning of the U.S. Supreme Court's decision in *Janus v. AFSCME*, 138 S. Ct. 2448 (2018), plaintiff sent LRCEA a written notice requesting that it end her union membership and revoke her previous authorization for dues deductions. Compl. ¶ 22; *see* Resignation Letter. LRCEA informed plaintiff she would have to remain a union member unless she resigned within the 30-day period after the expiration of the CBA in June 2020. Compl. ¶ 24. Plaintiff alleges LRCEA relied on the EERA to compel plaintiff to remain a member and continued to deduct dues from plaintiff's paychecks each pay period, without her consent. *Id.* ¶¶ 36–38. After this suit was filed, LRCEA ultimately confirmed plaintiff was discharged from LRCEA membership, effective July 1, 2020. *See* LRCEA Mot. at 7, ECF No. 24-1.

Before LRCEA discharged her from membership, plaintiff filed this suit on February 28, 2020. She named LRCEA, Los Rios Community College District and the President of the District's Board of Trustees John Knight,[3] alleging deprivation of her First and Fourteenth Amendment rights to refrain from subsidizing the union's speech through dues, without adequate consent as provided in *Janus*. Compl. ¶¶ 43–46, 56. Plaintiff alleges defendants violated her First Amendment rights in three ways: (1) deducting union dues from plaintiff's paychecks; (2) claiming the authority to prevent plaintiff's resignation from the LRCEA at a time of her choosing; and (3) enforcing the LRCEA's revocation policy with respect to her dues deductions. *See Id.* ¶¶ 3, 64. In her complaint, plaintiff mounts facial and as-applied challenges to the constitutionality of California Government Code sections 3540.1(i)(1), 3542(2), 3543(2) and 3546(a), *see* Compl. ¶¶ 48, 51, 60, and California Education Code section 88167, *id*. ¶¶ 63, 67,

---

[3] The Los Rios Community College District and Knight entered a stipulation with plaintiff whereby the District remains as a defendant but will "not oppose or otherwise contest the allegations or underlying legal theories in the Complaint." Stip. LRCEA Non-Opp'n at 2, ECF No. 7. In exchange, plaintiff waives her right to recover attorneys' fees and costs from the District if she prevails. *Id.*

4

71, alleging these statutes violate her right to free association, free speech, thought and conscience under the U.S. Constitution, *id*. ¶ 48. Plaintiff seeks a judgment declaring that California Government Code sections 3540.1(i)(1), 3542(2) and 3546 violate plaintiff's First and Fourteenth Amendment rights as well as damages for the alleged violation of her First Amendment rights, and attorneys' fees and costs under 42 U.S.C. § 1988. *Id.* ¶¶ 12–13.

Three motions are pending before the court: (1) the motion to dismiss filed by the California Attorney General, AG MTD, ECF No. 22; (2) a request for judgment on the pleadings by plaintiff, Woltkamp Mot., ECF No. 23; and (3) a request for judgment on the pleadings by defendant LRCEA, LRCEA Mot., ECF No. 24. In connection with these motions, there are two outstanding requests for judicial notice, ECF No. 22-3; ECF No. 38, the parties filed a joint stipulation, ECF No. 25; plaintiff filed a notice of errata, ECF No. 39; and defendant filed two statements of recent decisions, ECF Nos. 41 & 43.

On September 25, 2020, the court held a videoconference hearing on the motions. Shella Sadovnik appeared on behalf of plaintiff, Monique Alonso appeared for defendant LRCEA, and Anthony O'Brien appeared on behalf of the California Attorney General. The court granted the parties leave to file supplemental briefing addressing: (1) two cases decided since the motions were fully briefed, *Belgau v. Inslee*, 975 F.3d 940 (9th Cir. 2020) and *Savas v. California State Law Enf't Agency*, No. 20-CV-00032-DMS-DEB, 2020 WL 5408940 (S.D. Cal. Sept. 9, 2020), and (2) whether plaintiff's First Amendment freedom of association claim raises a question of first impression not addressed by these recent decisions. *See* Minutes, ECF No. 45. The court submitted the matter after receiving supplemental briefing by plaintiff, Woltkamp Suppl. Br., ECF No. 47; objections by defendant LRCEA, Obj., ECF No. 48, and a notice of intent not to file supplemental briefing by the Attorney General, Not., ECF No. 46. The court addresses all three pending motions here.

**II. MOTION TO DISMISS**

    **A. Legal Standard**

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a

"cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & Cty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations elements do not alone suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

Standing and mootness are limitations on federal courts' subject matter jurisdiction and may be a basis for Rule 12(b)(1) dismissal. *See* Fed. R. Civ. P. 12(b)(1); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013) (internal quotation omitted). The Supreme Court has "insisted that the injury proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 565 n. 2 (1992). Mootness is a prudential limitation on jurisdiction, triggered when the injury giving rise to the case no longer exists, leaving no case or controversy for the court to resolve. *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 189 (2000); *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

**B.  Standing & Mootness**

The Attorney General as intervenor challenges the court's jurisdiction to hear this matter on two bases: standing and mootness. *See* AG MTD at 13–19. LRCEA joins the Attorney

General's motion to dismiss and incorporates his arguments by reference. *See* LRCEA Mot. at 10 n.8, ECF No. 24. If standing is lacking or the matter is moot, the court must dismiss for lack of jurisdiction. The court, however, finds it has jurisdiction to decide the merits of plaintiff's claims, as explained below.

### 1. Standing

The Attorney General argues plaintiff cannot establish any injury-in-fact resulting from enforcement of the facially challenged statutes because at the time of her challenge she was a union member and the statutes address "fair-share fees from *nonunion* members." AG MTD at 17 (emphasis in original). Additionally, "no state law compelled [her] to join the union or consent to payroll deductions." LRCEA Mot. at 11. Plaintiff argues she has standing because LRCEA could not have included maintenance of membership dues for the term of the labor contract in the CBA "*but for* the [challenged] statutes," and the CBA does not constitute valid consent under the Supreme Court's ruling in *Janus*. *See* Compl. at 12; MTD Opp'n at 12–13, ECF No. 28 (emphasis in original).

"The existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571 n.4 (1992) (emphasis in original). The court finds a controversy existed and plaintiff had standing when she filed her complaint based on LRCEA's continued deduction of membership dues for nearly two years after her September 19, 2018 request to withdraw from the union.

### 2. Mootness

Plaintiff's claim for nominal damages also is not moot. Because the possibility of plaintiff's rejoining LRCEA is implausible given her professed views, the court addresses each claim below without reaching the "capable of repetition but evading review" exception to the Article III mootness doctrine. *See United States v. Sanchez*, 138 S. Ct. 1532, 1540 (2018) ("A dispute qualifies for [capable of repetition yet evading review] only if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." (internal quotation omitted)).

7

Plaintiff maintains her claims are not moot because she seeks declaratory relief and nominal damages for the period she was not permitted to resign from LRCEA. *See* MTD Opp'n at 25. At hearing, plaintiff clarified she does not seek injunctive or equitable relief. In light of this clarification, the court deems plaintiff's request for injunctive relief in the complaint withdrawn. Even so, "[a] live claim for nominal damages will prevent dismissal for mootness." *Bernhardt v. City of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002). This is true even where related claims for injunctive relief and compensatory damages have been rendered moot. *Lokey v. Richardson*, 600 F.2d 1265, 1266 (9th Cir. 1979) (claim for nominal damages prevented dismissal even though claim for injunctive relief was moot); *Chew v. Gates*, 27 F.3d 1432, 1437 (9th Cir. 1994) (claim for nominal damages prevented dismissal even if claim for actual damages might be moot). This is because nominal damages, while symbolic in nature, serve the important purpose of vindicating an individual's rights even when no actual damages are available. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 872 (9th Cir. 2017). Accordingly, plaintiff's case is not moot with respect to her requests for declaratory relief and nominal damages. The court thus proceeds to the merits of the motion to dismiss.

### C. Analysis

#### 1. Claims Against LRCEA

Plaintiff's § 1983 claims are based on the assertion that LRCEA violated her First Amendment rights (1) to resign union membership; (2) by continuing to deduct dues from her wages, and (3) by unconstitutionally compelling her to remain a member of LRCEA without adequate consent. *See* Compl. ¶¶ 43–46, 56. As explained below, she does not adequately state a § 1983 claim.

To plead a claim under § 1983, a plaintiff must first show "the conduct complained of was committed by a person acting under color of state law." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). "[C]onstitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (emphasis in original). First, the court asks "whether the claimed deprivation has resulted from

the exercise of a right or privilege having its source in state authority," and second, whether defendant "may be appropriately characterized as [a] 'state actor[].'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982). State action exists only when the answers to both questions are in the affirmative. *See Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989) (citing *Lugar*, 457 U.S. at 937–39).

In a separate case, this court recently found the state's fee deduction on behalf of a union did not render the union a state actor. *See Polk v. Yee*, 481 F. Supp. 3d 1060, 1066 (E.D. Cal. 2020) (relying on *Belgau v. Inslee*, 359 F. Supp. 3d 1000 (W.D. Wash. 2019), *aff'd*, 975 F.3d 940, 947 (9th Cir. 2020)). Here, although there is a connection between the alleged constitutional violation and the alleged state action, plaintiffs have not pled facts to show LRCEA acted "in concert" with the state to cause the deduction of dues and prevent withdrawal from membership. *Id.*; *see Belgau*, 975 F.3d at 947 ("A joint action between a state and a private party may be found . . . [when] the government either (1) affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party, or (2) otherwise has so far insinuated itself into a position of interdependence with the non-governmental party, that it is recognized as a joint participant in the challenged activity." (internal quotations omitted)). Despite plaintiff's contention that she did not waive her constitutional right to not fund union advocacy, Compl. ¶¶ 69–73, plaintiff expressly consented to the terms of her union membership. When plaintiff became a member of LRCEA, she signed a membership application and affirmatively consented to union membership for a set period of time, including limitations on withdrawal and dues deductions. Compl. ¶¶ 20, 24; *see Belgau*, 975 F.3d at 950–51 ("Choosing to pay union dues cannot be decoupled from the decision to join a union."); *Savas v. California State Law Enf't Agency*, No. 20-CV-00032-DMS-DEB, 2020 WL 5408940, at *3 (S.D. Cal. Sept. 9, 2020) (noting holding in *Janus* does not apply to voluntary agreements to join union).

Here, the dues deduction authorization form plaintiff voluntarily signed expressly stated this is an "Agreement with Classified Employee Association Contract, Article 2." The CBA provides for limits on the ability to withdraw from membership, circumscribing a withdrawal period of 30 days after the expiration of the current CBA. Plaintiff's signing the membership

application cannot be decoupled from the CBA, just as choosing to pay union dues cannot be decoupled from the decision to join a union. Plaintiff does not provide authority to counter the proposition that her contract with LRCEA is comprised of the membership application and the CBA, or to support the position that California's role was to enforce the parties' private agreement. *See Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 844 (9th Cir. 2017) ("permission of private choice cannot support a finding of state action"); *see also Shelley v. Kraemer*, 334 U.S. 1, 13 (1948) (There is "no shield against merely private conduct."). Accordingly, the court finds the LRCEA was not acting under color of state law in enforcing plaintiff's membership agreement.

Next, plaintiff fails to allege any violation of her First Amendment rights. The Ninth Circuit recently decided, in an unpublished disposition, that the continued deduction of union dues in accordance with the provisions of a signed membership agreement did not violate plaintiffs' First Amendment rights. *See Fisk v. Inslee*, 759 F. App'x 632, 633–34 (9th Cir. 2019) ("[T]he First Amendment does not preclude the enforcement of 'legal obligations' that are bargained-for and 'self-imposed' under state contract law.") (quoting *Cohen v. Cowles Media Co.*, 501 U.S. 663, 668–71 (1991)). This observation is applicable here, where there is no indication plaintiff was coerced into entering the union membership with dues deductions agreement in first place. Accordingly, the court finds *Janus* is inapplicable to union members like plaintiff, who agreed to become dues-paying members and agreed to restrictions governing when they could withdraw from union membership. All four of plaintiffs' § 1983 claims against LRCEA must be dismissed.

### 2. Claims Against State Defendants

Plaintiff challenges California Government Code sections 3540.1(i)(1), 3542(2) and 3546 as enforced by the Attorney General, along with the CBA, alleging each violate her "right to free association, free speech, thought, and conscience under the U.S. Constitution." Compl. ¶¶ 48–49. At hearing, plaintiff's counsel claimed her case raises a question of first impression regarding freedom of association. *See* Woltkamp Suppl. Br. at 2–5. Plaintiff argues the "ministerial exception" to state action found in *Belgau*, 975 F.3d at 948, is inapplicable here because the

source of the harm, namely membership restrictions connected to continued employment, is rooted in the CBA and state statutes, not her private membership agreement. *Id.* At hearing, defendant LRCEA argued *Belgau* and *Savas* discussed and rejected a freedom of association claim similar to Woltkamp's claim. *See* Woltkamp Suppl. Br. at 2–5. Plaintiff's rejoinder is that her case is distinguishable because "she has been forced to *remain a union member* for nearly two years after she resigned her membership." *Id.* at 4 (citing generally *Elrod v. Burns*, 427 U.S. 347 (1976)) (emphasis in original); Compl. ¶¶ 18–25. The court concludes plaintiff does not raise an issue of "first impression," but rather the same issue of law and fact other courts have addressed in interpreting the *Janus* decision and what it means for those who, like plaintiff, voluntarily joined the union.

In *Savas*, for example, plaintiffs alleged defendants refused to accept their resignations from union membership after plaintiffs submitted them. 2020 WL 5408940, at *5. The court found "*Janus* did not explicitly announce the right of resignation [plaintiff] seeks to enforce," *id.* at *4, observing that "[t]he statutes and the [CBA] do not compel involuntary membership or deductions," *id.* at *5. Moreover, the Ninth Circuit made clear "[t]he membership card [plaintiff] signed, titled "Payroll Deduction Authorization," begins with the statement: "Yes! I want to be a union member," and this choice to voluntarily join a union "cannot be decoupled from the decision" to in fact be a union member. *Belgau*, 975 F.3d at 950–51; *Mendez v. California Teachers Ass'n, et al.*, 419 F. Supp. 3d 1182, 1186 (N.D. Cal. 2020) ("*Janus* does not preclude enforcement of union membership").

At hearing plaintiff's counsel pressed her point, arguing defendants erroneously conflate the *Belgau* court's analysis of a compelled speech claim with a freedom of association claim because no party in *Belgau* argued that the phrase "Yes! I want to be a union member" in the Dues Deduction Authorization Form was enforceable after plaintiff's resignation from membership. Here, plaintiff was told she could not end her union membership until the end of the CBA at the time she agreed to join. Compl. ¶¶18–24. Plaintiff does not claim that initially joining the union was a necessary condition of employment in violation of her freedom to associate, which could state a viable claim. *See Rutan v. Republican Party of Illinois*, 497 U.S.

62, 78 (1990) ("Under our sustained precedent, conditioning hiring decisions on political belief and association plainly constitutes an unconstitutional condition, unless the government has a vital interest in doing so."); *State Emp. Bargaining Agent Coal. v. Rowland*, 718 F.3d 126, 133 (2d Cir. 2013) ("Conditioning public employment on union membership is [] subject to strict scrutiny").

The Supreme Court has made clear that a person can "contract away and waive" her First Amendment rights. *Smith v. Teamsters Loc. 2010*, No. CV1900771, 2019 WL 6647935, at *8 (C.D. Cal. Dec. 3, 2019) (citing *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991) ("[T]he First Amendment does not confer . . . a constitutional right to disregard promises that would otherwise be enforced under state law.")). Here, in March 2017, Woltkamp agreed to become a union member and chose to remain a union member even though the July 2017 renewal of the CBA allowed her an opportunity to resign at that time. Compl. ¶¶ 16, 20; *see NLRB v. Va. Elec. & Power Co.*, 314 U.S. 469, 477 (1941) (plaintiff had (and has) a First Amendment right not to join a union). In March 17, 2017, when she joined the union, plaintiff could have chosen not to sign the dues-authorization agreement. Where rights are freely forfeited, there is no First Amendment compulsion. *See Janus*, 138 S. Ct. at 2464. Moreover, plaintiff does not plead a causal connection between her alleged injuries, of continued dues deductions and limitations on the ability to withdraw from union membership, *see* Compl. ¶¶ 25–29, and the challenged statutes, *see Belgau*, 975 F.3d at 950 (9th Cir. 2020) ("These facts speak to a contractual obligation, not a First Amendment violation."). Rather, the statutes she points to do not require union membership as a condition of employment. And the State of California no longer enforces California Government Code section 3546(a), which relates to fair-share agency fees. *See* De La Torre Decl. ¶¶ 3–4, ECF No. 22-2 (noting since June 27, 2018, the Office of the General Counsel no longer enforces section 3546)). Accordingly, plaintiff's First Amendment claims against State defendants are dismissed.

Plaintiff's Fourteenth Amendment claim, Compl. ¶¶ 66–71, also must be dismissed because she improperly invokes procedural due process as a means of attempting to protect her asserted First Amendment rights. *Id.* ¶ 67 (alleging "dues deduction procedures" result "in the

deduction of money from her wages without constitutionally required procedural safeguards");
*see also id.* ¶ 47 ("Defendants compel the Plaintiff to associate with the Union without the necessary procedural safeguards"). To establish a violation of procedural due process, "[w]e first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (internal citation omitted). Here, no protectible liberty or property right has been implicated because, as discussed above, the LCREA is a private actor that cannot violate plaintiff's First Amendment rights. *Janus* did not identify the First Amendment right that plaintiff seeks to enforce. Plaintiff's Fourteenth Amendment claim, therefore, fails as a matter of law because plaintiff has not and cannot plead the first element of a procedural due process claim.

### D. Conclusion

Because California continued to deduct union dues until the CBA expired, *see* Compl. ¶ 67, plaintiff has stated a claim for retrospective, nominal damages, which she may pursue in state court. Given that federal jurisdiction is based on nominal damages, the court may decline to exercise jurisdiction over any remaining state law claim. 28 U.S.C. § 1367(c)(2). In deciding whether to exercise supplemental jurisdiction, courts consider "the values of judicial economy, convenience, fairness, and comity[,]" but ultimately apply a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Brooks v. FCI Lender Servs., Inc*, No. 2:16-CV-02598 KJM KJN, 2018 WL 495634, at *2 (E.D. Cal. Jan. 22, 2018). The court here exercises its discretion to decline supplemental jurisdiction over any contract-based claim for damages for dues plaintiff paid from September 19, 2018 to July 1, 2020. *See Titan Global LLC v. Organo Gold Intern., Inc.,* No. 12–CV–2104–LHK, 2012 WL 6019285, at *11–12 (N.D. Cal. Dec. 2, 2012) (declining supplemental jurisdiction over claim requiring interpretation of agreement not at issue in other claims). Additionally, leave to amend need not be granted if amendment would be
/////

futile, as here, because no amendment can cure the complaint's deficiencies for plaintiff's alleged § 1983 claims. *See Garmon v. County of L.A.*, 828 F.3d 837, 842 (9th Cir. 2016).

The court grants the Attorney General's motion to dismiss without leave to amend.

**IV.    CONCLUSION**

(1) Intervenor's motion to dismiss is granted, ECF No. 22;

(2) Plaintiff's motion for judgment on the pleadings is denied as moot, ECF No. 23;

(3) Defendant's motion for judgment on the pleadings is denied as moot, ECF No. 24;

(4) Plaintiff's request for judicial notice is granted, ECF No. 38; and

(5) Intervenor's request for judicial notice is granted.

This order resolves ECF Nos. 22, 23, 24, 38. The court reviewed the parties' Jt. Status Report filed on September 11, 2020, ECF No. 42. Given the current posture of this case the court declines to issue a scheduling order. Case closed.

IT IS SO ORDERED.

DATED: May 12, 2021.

CHIEF UNITED STATES DISTRICT JUDGE